**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TANYA MCDONALD,

Defendant-Appellant.

No. 06-4017
(D.C. No. 2:05-CR-183-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

Tanya McDonald was convicted by a jury of two counts of bank fraud in

violation of 18 U.S.C. § 1344. McDonald was sentenced to 24 months'

imprisonment and 60 months of supervised released. She was also ordered to pay

restitution in the amount of $110,500. McDonald appeals her convictions and

sentence, claiming the government presented insufficient evidence to support

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent except under the doctrines of law of the case, res judicata and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Fed.
R. App. P. 32.1 and 10th Cir. R. 32.1.

convictions for bank fraud, the jury instruction setting forth the elements of bank fraud was plainly erroneous, and the district court erred in denying her motion for a new trial or judgment of acquittal. Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**.

After gaining the trust of the Valdivia family, McDonald agreed to assist them in obtaining a small business loan. She told them they could acquire a $1 million business loan from Mountain America Credit Union ("MACU") if they put up a ten percent deposit. McDonald had a Valdivia family member give her two $50,000 cashier's checks payable to MACU. She represented that the funds would be placed in an escrow account pending approval of the loan and that MACU would be responsible if anything happened to their money because it was federally insured. Instead, she deposited the money in her personal account and used it to purchase money orders for her own personal use.

When the Valdivias learned of McDonald's actions they contacted the police. They also sued MACU and obtained a monetary settlement. McDonald was convicted of two counts of bank fraud in violation of 18 U.S.C. § 1344. She then moved for judgment of acquittal, or in the alternative, a new trial. That motion was denied. She now appeals.

The federal bank fraud statute provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice–
(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

"The bank fraud statute contains virtually the same language as the [federal] mail and wire fraud statutes," and, like those statutes, "courts have construed the bank fraud statute liberally." United States v. Young, 952 F.2d 1252, 1255-56 (10th Cir. 1991). To convict under § 1344, the government must prove: "(1) that the defendant knowingly executed or attempted to execute a scheme (i) to defraud, or (ii) to obtain property by means of false or fraudulent pretenses, representations or promises; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was [federally insured]."[1] United States v. Rackley, 986 F.2d 1357, 1360-61 (10th Cir. 1993) (footnote omitted). To establish a violation of § 1344(1), the government must also prove that "the bank was put at potential risk by the scheme to defraud." Young, 952 F.2d at 1257. But cf. United States v. Sapp, 53 F.3d 1100, 1103 (10th Cir. 1995) ("[T]he government need not prove that a defendant put a bank 'at risk' to sustain a conviction under section 1344(2).").[2]

_____

[1] The parties stipulated at trial that MACU was federally insured.

[2] McDonald urges us to adopt a reading of subsection 2 that would require intent
(continued...)

-3-

McDonald contends the government presented insufficient evidence at trial to support her convictions for bank fraud. We review challenges to the sufficiency of the evidence de novo, viewing all evidence in the light most favorable to the government. United States v. Isaac-Sigala, 448 F.3d 1206, 1210 (10th Cir. 2006). "A conviction should be reversed only if no reasonable juror could have reached the disputed verdict." Id. (quotation omitted).

Although couched as a sufficiency of the evidence challenge, McDonald's basic argument is that the conduct proved at trial is not criminalized under § 1344. We disagree. McDonald made implicit false misrepresentations to MACU that she had authority to deposit the two cashier's checks into her personal bank account, which was critical to completing her fraudulent plan. These misrepresentations constitute sufficient evidence of McDonald's intent to defraud MACU. See Young, 952 F.2d at 1255-57 (inferring intent to defraud a

----

[2](...continued)
to defraud a financial institution, rather than a general intent to defraud. The circuits are currently divided on this issue. See United States v. Thomas, 315 F.3d 190, 196 (3d Cir. 2002) (discussing the circuit split). We need not address the question here because, as we discuss below, the government proved beyond a reasonable doubt that McDonald intended to defraud MACU.

Similarly, the jury's general verdict does not present an issue. At the conclusion of McDonald's trial, the district court instructed the jury on the elements of both subsections of § 1344. The jury subsequently returned a general verdict convicting McDonald of two counts of bank fraud without specifying which subsection was violated as to each count. Because we have determined that the government adequately proved that McDonald committed bank fraud under both subsections of § 1344, this ambiguity does not impede our review.

financial institution from defendant's misrepresentation that she was authorized to cash certain checks). Nothing in § 1344 or its interpretative case law requires that a misrepresentation be explicit. Id. at 1256-57 (considering both implicit and explicit misrepresentations for purposes of establishing liability under § 1344(1)).

Additionally, as in Young, McDonald's conduct put MACU at potential risk of suffering a financial loss by exposing it to civil litigation. See id. at 1257. In fact, MACU eventually made a monetary payment to the Valdivias to settle their claim. We therefore have little difficulty concluding McDonald was properly convicted of engaging in a scheme to defraud MACU in violation of § 1344(1).

We have equally little trouble in determining McDonald was properly convicted under § 1344(2), which "extends to any knowingly false representation." Sapp, 53 F.3d at 1102 (quotation omitted). McDonald's misrepresentation to MACU that she had the authority to deposit the two checks into her personal account constituted a scheme to obtain funds under the custody of MACU "by means of false or fraudulent pretenses, representations or promises." § 1344(2); see also United States v. Briggs, 965 F.2d 10, 12 (5th Cir. 1992) (concluding that "an implicit misrepresentation by [the defendant] that she was acting under her employer's authority [when she made unauthorized wire transfers from her employer's bank account] would be sufficient to establish the misrepresentation element of [§ 1344(2)]."); United States v. Morgenstern, 933 F.2d 1108, 1113 (2d Cir. 1991) (affirming a conviction under § 1344(2) where

defendant implicitly misrepresented his authority to deposit checks).  Her intent

to defraud MACU is easily inferred by her actions.

McDonald also argues that Jury Instruction 15 was erroneous because it did

not require a finding of intent to defraud a financial institution and it commingled

the elements of §1344's two subsections.  Because she failed to object to the

instruction at trial, we review only for plain error.  United States v.

Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc).  On plain-error

review, we will reverse only if "there is (1) error, (2) that is plain, which (3)

affects substantial rights, and which (4) seriously affects the fairness, integrity, or

public reputation of judicial proceedings."  Id.  An error is "plain" if it is "clear

or obvious at the time of appeal."  Id.  To establish that a plain error affected her

substantial rights, McDonald must show "a reasonable probability that, but for the

error claimed, the result of the proceeding would have been different."  Id. at 733

(quotation omitted).

Instruction 15 set forth the elements of bank fraud under § 1344(1) and (2)

as follows:

> First:  the defendant knowingly executed a scheme or artifice to defraud Mountain America Credit Union or to obtain money or property from Mountain America Credit Union by means of false or fraudulent pretenses, representations, or promises;
> Second:  Mountain America Credit Union was insured by the National Credit Union Association as defined by 18 U.S.C. § 20;
> Third:  the defendant acted with intent to defraud.
> Fourth:  the false or fraudulent pretenses, representations, or promises that the defendant made were material, meaning they would

-6-

naturally tend to influence, or were capable of influencing the decision of Mountain America Credit Union.

. . . .

Although it is not necessary for the government to prove an actual loss of funds by the bank, the government must prove beyond a reasonable doubt that by executing or attempting to execute the scheme alleged in the Indictment, the defendant placed the bank at a risk of loss and that the bank did not knowingly accept such a risk.

Instruction 15 does not contain any error, let alone plain error. We reject McDonald's argument that the instruction permitted the jury to convict upon a finding that she intended to defraud the Valdivia family, rather than MACU. It specifically required findings that McDonald "executed a scheme or artifice to defraud <u>Mountain America Credit Union</u> or to obtain money or property from <u>Mountain America Credit Union</u>" and that the misrepresentations "would naturally tend to influence, or were capable of influencing the decision of <u>Mountain America Credit Union</u>" (emphasis added). Read as a whole, Instruction 15 made it clear to the jury that the fraudulent scheme and the requisite intent must have been directed towards MACU.

McDonald's commingling claim is without merit. Bank fraud instructions setting forth the elements of subsections 1 and 2 in the disjunctive are proper in this Circuit. <u>See</u> <u>Rackley</u>, 986 F.2d at 1361 n.5 ("We have previously held that this disjunctive instruction properly tracks the language of the statute and accurately states the necessary elements required to be found by a jury under the alternate prongs of 18 U.S.C. § 1344."). Further, the instruction substantially

mirrored this court's pattern bank fraud instruction. See 10th Cir., Criminal

Pattern Jury Instructions, No. 2.58.

For the reasons stated above, McDonald's convictions are **AFFIRMED**.

We also **AFFIRM** the district court's denial of her motion for a new trial or

judgment of acquittal. Because the government has failed to show any prejudice,

we **GRANT** McDonald's motion to supplement the record on appeal with a five-

volume supplemental appendix.

Entered for the Court


Carlos F. Lucero
Circuit Judge